Argued and submitted September 1, ballot measure explanatory statement certified as modified September 11, 1992

Don HOMUTH,
*Petitioner,*

*v.*

Phil KEISLING,
Joan Smith, Julie Dawson,
Paul McCoy, Jim Patterson and John Sallak,
*Respondents.*

(SC S39531 (Control))

Roger GRAYBEAL
and Automobile Club of Oregon,
*Petitioner,*

*v.*

Phil KEISLING,
Julie Dawson, Paul McCoy,
Jim Patterson, John Sallak and Joan Smith,
*Respondents,*

*and*

Don HOMUTH,
*Intervenor.*

(SC S39532)
(Cases Consolidated)

837 P2d 532

Charles F. Hinkle, of Stoel Rives Boley Jones & Grey, Portland, filed the petition and argued the cause for petitioner/intervenor (Homuth).

Jon P. Stride, of Tonkon, Torp, Galen, Marmaduke & Booth, Portland, filed the petition and argued the cause for petitioners (Graybeal and Automobile Club of Oregon). Also on the petition was Kurt W. Ruttum, Portland.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondents.

Before Carson, Chief Justice, and Peterson, Van Hoomissen, Fadeley, and Unis, Justices.

CARSON, C. J.

## CARSON, C. J.

## INTRODUCTION

Petitioners Roger Graybeal and Automobile Club of Oregon (AAA) (petitioners) and petitioner/intervenor Don Homuth (intervenor) bring an original proceeding in this court pursuant to ORS 251.235, seeking review of the explanatory statement for 1992 Ballot Measure 4, to be included in the Voters' Pamphlet for the next general election. If passed, Ballot Measure 4 would prohibit the operation of so-called "triples" in Oregon. The Oregon Department of Transportation defines a "triple" as a truck pulling two trailers or a truck tractor pulling three semitrailers. Pursuant to ORS 251.205, a draft of the explanatory statement for that ballot measure was prepared by a citizens committee on July 23, 1991. Pursuant to ORS 251.215(2), the Secretary of State held a hearing on July 29, 1992, to receive comments on the draft statement. The committee filed a revised statement on August 5, 1992.

Petitioners Graybeal and AAA seek three modifications of the explanatory statement. Intervenor Homuth seeks one alternative modification. He also challenges the standing of petitioners Graybeal and AAA to seek review of the explanatory statement. The Secretary of State, named as respondent, is represented by the Attorney General and takes no position on the proposed modifications.

## STATUTORY PROVISIONS

ORS 251.205(1) provides:

"Not later than the 120th day before a special election held on the date of a primary election or any general election at which a state measure is to be submitted to the people, a committee of five citizens shall be selected for each measure to prepare the explanatory statement under ORS 251.215. The proponents of the measure shall appoint two members to the committee and notify the Secretary of State of the selections. The Secretary of State shall appoint two members of the committee from among the opponents, if any, of the measure. Those four shall select the fifth member * * *."

ORS 251.215 provides, in part:

"(1)  Not later than the 99th day before a special election held on the date of a primary election or any general election

at which any state measure is to be submitted to the people, the committee appointed under ORS 251.205 shall prepare and file with the Secretary of State, an impartial, simple and understandable statement explaining the measure and its effect. The statement shall not exceed 500 words.

"(2) Not sooner than the 98th nor later than the 95th day before the election, the Secretary of State shall hold a hearing in Salem upon reasonable statewide notice to receive suggested changes to any explanatory statement. * * *

"(3) The committee for each measure shall consider suggestions submitted under subsection (2) of this section, and may file a revised statement with the Secretary of State not later than the 90th day before the election."

ORS 251.235 provides, in part:

"Any person dissatisfied with an explanatory statement for which suggestions were offered at the Secretary of State's hearing under ORS 251.215, may petition the Supreme Court seeking a different statement and stating the reasons the statement filed with the court is insufficient or unclear. If the petition is filed not later than the fifth day after the deadline for filing a revised statement with the Secretary of State, the court shall review the statement, hear arguments and certify an explanatory statement to the Secretary of State."

## STANDING

■     We deal first with the issue of petitioners' standing to seek review of the explanatory statement. Petitioner Graybeal is president of AAA and a registered voter in the State of Oregon. He did not personally submit suggestions at the hearing on the explanatory statement, although another representative of AAA did. ORS 251.235 allows petitions to this court for review of only those explanatory statements "for which suggestions were offered at the Secretary of State's hearing." This court has held that persons seeking review of an explanatory statement need not themselves be the persons who offered suggestions at the Secretary of State's hearing. *MacAfee v. Paulus*, 289 Or 651, 654-55, 616 P2d 493 (1980).[1] Petitioner Graybeal has standing to seek

---

[1] *Compare* ORS 250.085(2), dealing with review of ballot titles. Under that provision, only "electors" who "timely submitted written comments on the draft ballot title may petition the Supreme Court [for review.]"

review of the explanatory statement for Ballot Measure 4, and the petition is, therefore, properly before the court.[2]

## THE CHALLENGES

We turn now to the merits of petitioners' and intervenor's challenges. The text of the explanatory statement at issue here is as follows:

"Current law allows tractors pulling three trailers, or 'triples,' to operate on highways under special permits issued by Oregon road authority. These special permits place restrictive conditions on the operation of triples. The Oregon Department of Transportation definition of 'triple' is a truck pulling two trailers or a truck tractor pulling three semi-trailers. Without a special permit, such combinations violate statutory limits on length and number of vehicles in a combination.

"Measure 4 prohibits the issuance of special permits for triples. If passed, Measure 4 will become effective 30 days after the election.

"Proponents and opponents disagree on the effects of the Measure 4 ban on triples. The effects may include, but not be limited to: increased truck traffic on the highways; increased revenue to the state highway fund; impact on the cost of doing business and jobs in Oregon."

In *Teledyne Wah Chang Albany v. Powell*, 301 Or 590, 592-93, 724 P2d 319 (1986), this court stated its role in the review of an explanatory statement:

"The court must test the statement filed with the Secretary of State against the ORS 251.215(1) requirement that the statement be 'impartial, simple and understandable.' The requirement in ORS 251.215(1) that the statement explain the measure must be read with the insufficiency ground for challenge under ORS 251.235. Lack of impartiality is not specified as a ground for challenge, but impartiality is a requisite for sufficiency.

---

[2] We do not, therefore, need to decide whether co-petitioner AAA has standing to petition. We would note, however, that this court has considered petitions of businesses challenging explanatory statements, without specifically addressing whether they are "persons" entitled to petition under ORS 251.235. *See, e.g., Teledyne Wah Chang Albany v. Powell*, 301 Or 590, 724 P2d 319 (1986) (petition brought by business corporation); *Teledyne Industries v. Paulus*, 297 Or 665, 687 P2d 1077 (1984) (same).

"* * * * *

"* * * our task is not to write a better statement, but only to determine whether the explanatory statement is a sufficient and clear statement of the measure and its effect."

Thus, a statement is "insufficient" if it is not impartial. It also is insufficient if it is "potentially misleading." *Sollis v. Hand*, 310 Or 251, 256, 796 P2d 1188 (1990); *June v. Roberts*, 301 Or 586, 589, 724 P2d 267 (1986).

■　　Petitioners object to the explanatory statement in three respects. First, they contend that the use in the second sentence of the term "special permits" to describe the permits currently issued to triples is incorrect and thus misleading. They contend that the correct term is "variance permits." The Department of Transportation calls these permits "Special Transportation Permits." We conclude that the use of the term "special permits" is not misleading.

　　Secondly, petitioners also object to the use, in that same sentence, of the adjective "restrictive" to modify the word "conditions." They argue that the term "restrictive conditions" is redundant and implies the existence of more severe restraints on the operation of triples than may in fact exist, thus misleading voters. Before modifying or invalidating some part of an explanatory statement, this court should find that its insufficiency is "beyond reasonable argument." *Teledyne Wah Chang Albany v. Powell, supra*, 301 Or at 593. We do not find the challenged term "restrictive conditions" insufficient.

■　　Finally, petitioners contend that the entire last paragraph of the explanatory statement is speculative, misleading, and not impartial. They argue that none of the listed possible effects — "increased truck traffic on the highways; increased revenue to the state highway fund; impact on the cost of doing business and jobs in Oregon" — is "required" by the passage of the measure. They request that the paragraph be deleted.

　　We agree with petitioners that the paragraph suffers from several defects. One of the effects listed, "impact on the cost of doing business and jobs in Oregon," does not even indicate what the nature of its impact would be. The statement is unclear and communicates nothing. Another,

"increased revenue to the state highway fund," is merely a secondary effect that might result from another listed possible effect, "increased truck traffic on the highways." Its inclusion is misleading to voters. Moreover, fatal to the acceptability of all the listed effects is the committee's acknowledgment that "[p]roponents and opponents disagree on the effects" of the measure, and the committee's considered use of the term "effects may include" to introduce the list of effects.[3]

As set forth above, ORS 251.215(1) requires the explanatory statement for a ballot measure to "explain[] the measure and its effect." In *June v. Roberts*, 310 Or 244, 249, 797 P2d 357 (1990), this court found that an effect proposed to be added to the explanatory statement at issue in that case was "speculative and [did] not belong in the official Explanatory Statement." Possible effects, particularly those whose occurrence is in dispute, are properly put before the voters through the use of arguments printed in the Voters' Pamphlet pursuant to ORS 251.255. *Id.* The inclusion of effects that are only possible in the explanatory statement accompanying Ballot Measure 4 renders that statement potentially misleading to voters and thus insufficient. ORS 251.235; *Sollis v. Hand, supra,* 310 Or at 256.

Intervenor contends that a portion of paragraph three is misleading and not impartial for a different reason. Citing testimony from interested persons during the hearing on the statement, he contends that one of the listed effects, "increased truck traffic on the highways," is not speculative, but certain. He requests that the statement be revised to state that the effects of Ballot Measure 4 "will include" increased truck traffic. We already have noted the committee's deliberate rejection of the term "will include" in relation to this effect. Considering that fact, we decline to adopt that wording ourselves.

Pursuant to ORS 251.235, we approve the following explanatory statement as an "impartial, simple and understandable statement explaining the measure and its effect," ORS 251.215(1):

---

[3] We note that the first draft of the explanatory statement stated that "Measure 4 *will* result in an increase of truck traffic on Oregon highways." (Emphasis added.)

Current law allows tractors pulling three trailers, or "triples," to operate on highways under special permits issued by Oregon road authority. These special permits place restrictive conditions on the operation of triples. The Oregon Department of Transportation definition of "triple" is a truck pulling two trailers or a truck tractor pulling three semitrailers. Without a special permit, such combinations violate statutory limits on length and number of vehicles in a combination.

Measure 4 prohibits the issuance of special permits for triples. If passed, Measure 4 will become effective 30 days after the election.

Ballot measure explanatory statement certified as modified.